IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SIEMENS INDUSTRY, INC.,

    Plaintiff,

v.

SIPCO, LLC,

    Defendant.

CIVIL ACTION NO.
1:10-cv-2478-JEC

# O R D E R  &  O P I N I O N

This case is before the Court on defendant's Motion to File its Statement of Facts Under Seal [110], plaintiff's Motion to File Summary Judgment Documents Under Seal [112], plaintiff's Motion for Summary Judgment [113] and related Motion for Oral Argument [114], defendant's Motion for Summary Judgment [122], plaintiff's Motion to Strike Declaration Testimony [133], and plaintiff's Motion to File Documents Under Seal [134]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the Motions to Seal [110], [112] and [134] should be **GRANTED as unopposed**, plaintiff's Motion for Summary Judgment [113] should be **GRANTED** and related Motion for Oral Argument [114] should be **DENIED as moot**, defendant's Motion for Summary Judgment [122]

should be **DENIED**, and plaintiff's Motion to Strike Declaration Testimony [133] should be **DENIED as moot.**

### BACKGROUND

This case involves a contract and patent dispute. (Am. Compl. [4] at ¶ 1.) Defendant is the owner of three patents covering certain wireless network technology. (*Id.* at ¶¶ 2-4.) In 2005, defendant sued third party Cellnet Technology, Inc. ("Cellnet") for infringement of those patents. (*Id.* at ¶¶ 16-18.) During the course of the litigation, Cellnet was consolidated with two other companies under the name Landis+Gyr, Inc. ("L&G"). (*Id.* at ¶¶ 19-20.) Defendant and L&G ultimately resolved their patent dispute in a settlement agreement executed in May 2009 (the "L&G Settlement Agreement"). (*Id.* at ¶ 22.)

Pursuant to the L&G Settlement Agreement, defendant licensed its patents to L&G and L&G's corporate affiliates, identified collectively in the Agreement as the "L&G Parties." (Am. Compl. [4] at ¶ 25 and L&G Settlement Agreement at §§ 7.1 and 7.4, attached to Compl. [3] at Ex. D.) In conjunction with the license, defendant released the L&G Parties from "any and all . . . claims or demands alleging past or present infringement" of the patents. (L&G Settlement Agreement [3] at § 5.1.) Defendant also promised in the Settlement Agreement that it would "never threaten, assert or

2

AO 72A
(Rev.8/82)

litigate against any L&G Party any claim or demand of any kind or nature." (*Id.* at § 6.1.)

Approximately a year after defendant executed the L&G Settlement Agreement, it filed a patent infringement claim against plaintiff in the Eastern District of Texas. (Am. Compl. [4] at ¶¶ 54-55.) Plaintiff subsequently initiated the present action, based on its alleged status as an L&G Party. (*Id.* at ¶¶ 30-52.) Plaintiff contends that defendant breached the Agreement by pursuing the patent litigation in Texas. (*Id.* at ¶¶ 70-80.) In its complaint, plaintiff seeks damages for the alleged breach of contract, as well as a declaratory judgment that defendant's patent claims are barred by the doctrines of license and release.[1] (*Id.* at 17-19.)

Defendant moved to dismiss the complaint on the ground that plaintiff, as a non-signatory, lacks standing to assert a claim under the Agreement.[2] (Def.'s Mot. to Dismiss [19].) The Court denied the motion, finding sufficient factual support for the argument that

---

[1] In addition, plaintiff seeks a declaratory judgment of patent non-infringement and invalidity. (Am. Compl. [4] at ¶¶ 58-69.) However, that claim is not relevant to the motions that are now before the Court.

[2] Defendant also argued that plaintiff's complaint should be dismissed under the first to file rule, because it is the mirror image of the earlier filed Texas litigation. (Def.'s Br. in Supp. of Mot. to Dismiss [19] at 16-25.) That argument was rendered moot by the Texas court's decision to transfer the Texas action to this Court pursuant to 28 U.S.C. § 1404(a). (Order [72] at 5-6.)

plaintiff is an L&G Party entitled by the express terms of the Settlement Agreement to enforce its provisions. (Order [72] at 9.) Following the Court's order, defendant filed an answer and four counterclaims for patent infringement and breach of contract. (Answer [74].)  The parties then completed the first phase of discovery, which was limited to the contractual dispute.  (Jt. Preliminary Report and Discovery Plan [80].)

Pursuant to their bifurcation plan, the parties have now filed cross motions for summary judgment addressing the contractual issues. (Pl.'s Mot. for Summ. J. [113] and Def.'s Mot. for Summ. J. [122].) Plaintiff has also filed a related motion to strike declaration testimony submitted by defendant in support of summary judgment. (Pl.'s Mot. to Strike [133].)  In addition, both parties have filed several motions requesting permission to file certain pleadings and other documents under seal.  (Mots. to Seal [110], [112] and [134].)

## DISCUSSION

**I.    SUMMARY JUDGMENT MOTIONS**

    **A.    Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c).  A fact's materiality is determined by the controlling

4

substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id*. at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non[-]moving party's case." *Id*. at 325. After the movant has carried his burden, the non-moving party is then required to "go

5

beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id*. at 324. The court is to view all evidence and factual inferences in a light most favorable to the non-moving party. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

### B. Applicable Law

The Settlement Agreement contains a choice of law provision that requires the application of Georgia law to "all matters arising out of or relating to th[e] Agreement." (L&G Settlement Agreement [3] at § 10.12.) The Court thus applies Georgia contract law to resolve the contractual dispute between the parties. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007)("A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state.") and *Kinnick v. Textron Fin. Corp.*, 205 Ga. App. 429, 430 (1992)(Georgia courts "will normally enforce a contractual choice of law clause" absent a contrary public policy).

In Georgia, the "cardinal rule" of contract construction is to determine the intent of the contracting parties. O.C.G.A. § 13-2-3.

6

To make that determination, Georgia courts proceed through the following three steps:

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Blue Cross & Blue Shield of Ga., Inc. v. Shirley,* 305 Ga. App. 434, 437 (2010). Applying the above framework, the construction of a contract is generally a question of law for the Court rather than a question of fact for the jury. O.C.G.A. § 13-2-1. *See also Record Town, Inc. v. Sugarloaf Mills Ltd. P'ship of Ga.,* 301 Ga. App. 367 (2009)(quoting § 13-2-1).

### C.  Governing Contract Provisions

The L&G Settlement Agreement defines and references two separate categories of L&G Parties. (L&G Settlement Agreement [3] at 1, 3.) As defined by the Agreement, the "Named L&G Parties" include only the parties that are "listed on the signature page of th[e] Agreement." (*Id.* at 1.) "L&G Parties" is a broader category that includes:

> all Persons [or entities] that, prior to or on the date of this Agreement, were or are directly or indirectly controlled by, controlling or under common control with any Named L&G Party.

7

(*Id*. at § 1.1.)  In several of its provisions, the Agreement clearly distinguishes between the L&G Parties and the Named L&G Parties. (*Id*. at Arts. 2 and 3.)

By its plain terms, the Agreement confers upon the broader group of L&G Parties a number of contractual rights and benefits.  (*Id*. at §§ 5.1, 6.1 and 7.1.)  Section 5.1 of the Agreement states that:

> The Named Releasing Parties, on behalf of themselves and the other Releasing Parties, hereby release and forever discharge the L&G Parties from any and all claims and demands of every kind and nature . . . including claims or demands alleging past or present infringement of any of the Assigned Patents, Licensed Patents, Other Intellectual Property Rights or Transferred Patents.

(L&G Settlement Agreement [3] at § 5.1.)  The release conveyed by the above language unambiguously applies to all L&G Parties rather than just the Named L&G Parties.

Section 6.1 is similarly unambiguous.  Section 6.1 states that:

> The Named Releasing Parties, on behalf of themselves and the other Releasing Parties, hereby covenant and agree that . . . they will never threaten, assert or litigate against any L&G Party any claim or demand of any kind or nature . . . whether arising prior to, on or after the date of this Agreement and regardless of the subject matter.

(*Id*. at § 6.1.)  By executing § 6.1, defendant agreed not to sue or threaten suit against any L&G Party on the patents in suit.

Finally, § 7.1 of the Agreement grants:

> to the L&G Parties a nonexclusive, unlimited, perpetual, worldwide, non-revocable, royalty free, paid up license, without field of use restrictions, to use, make, have made, sell, offer to sell, import and export any product or

8

> service that incorporates, uses, practices or embodies any of the Assigned Patents or any claim thereof.

(*Id.* at § 7.1.) Again, the intent of § 7 is clear: to license the patents in suit to all L&G Parties.

### 1. Plaintiff is an L&G Party and a third-party beneficiary of the contract.

Defendant does not dispute that plaintiff is an L&G Party under the L&G Settlement Agreement. (Def.'s Br. [123] at 10-24.) As noted, the Agreement defines the term "L&G Party" broadly to include any entity that was "under common control with [a] Named L&G Party" prior to or on the date of its execution. (L&G Settlement Agreement [3] at § 1.1.) As alleged in the complaint and confirmed in discovery, plaintiff and L&G were under the common control of Siemens AG between 1998 and 2002.[3] (Pl.'s Statement of Material Facts ("Pl.'s SMF") [117] at ¶¶ 12-21.)

Nevertheless, defendant argues that plaintiff lacks standing to enforce the Settlement Agreement because it is not a signatory to the contract. (Def.'s Br. [123] at 10-15.) That argument is easily dismissed. Under Georgia law, a non-signatory can enforce a contract

---

[3] Siemens AG acquired L&G in 1998. (Pl.'s SMF [117] at ¶ 12.) As part of the acquisition, L&G's metering business was merged into Siemens Metering, Inc. ("Siemens Metering"), a subsidiary under Siemens AG's control. (*Id.* at ¶ 13.) Siemens AG owned and controlled Siemens Metering until 2002. (*Id.* at ¶¶ 14-16.) Plaintiff has been under Siemens AG's control since at least 1998. (*Id.* at ¶ 20.)

9

"'if it clearly appears from the contract that it was intended for his benefit.'" *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437 (2006)(quoting *Northen v. Tobin,* 262 Ga. App. 339, 344 (2003)). *See also Danjor, Inc. v. Corp. Constr., Inc.*, 272 Ga. App. 695, 697 (2005)(pursuant to O.C.G.A. § 9-2-20(b) "'[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract'"). Under that circumstance, the non-signatory qualifies as a third-party beneficiary. *Danjor, Inc.,* 272 Ga. App. at 697.

As an undisputed L&G Party, plaintiff clearly is a third party beneficiary of the L&G Settlement Agreement. The Agreement expressly confers upon all L&G Parties several important contractual rights, including a covenant not to sue, a release and a license to the patents in suit. (L&G Settlement Agreement [3] at §§ 5.1, 6.1 and 7.1.) Based on the plain language of the Agreement, there is no question that it was "intended for [the] benefit" of all L&G Parties, including non-signatories such as plaintiff. *Kaesemeyer,* 278 Ga. App. at 437 and *Northen,* 262 Ga. App. at 344 (finding that certain unnamed creditors were third party beneficiaries of a settlement agreement with standing to enforce its terms).

10

> 2. <u>Section 10.8 does not preclude plaintiff's claims</u>.

Contrary to defendant's suggestion, § 10.8 of the L&G Settlement Agreement does not alter the analysis. (Def.'s Br. [123] at 5, 8-15.)  Section 10.8 states:

> <u>No Third Party Rights</u>.  Nothing expressed or implied in this Agreement will be construed to give any Person, other than the parties to this Agreement, any legal or equitable right, remedy or claim under or with respect to this Agreement.

(L&G Settlement Agreement [3] at § 10.8.)  According to defendant, § 10.8 prohibits any entity other than a Named L&G Party from asserting rights under the Agreement. (Def.'s Br. [123] at 5, 8-15.)

As an initial matter, the Court finds that there is an ambiguity concerning the meaning of the term "parties to this Agreement" as used in § 10.8.  The Agreement expressly defines and references two categories of parties:  Named L&G Parties and L&G Parties.  (L&G Settlement Agreement [3] at 1, 3.)  If § 10.8 specified that only Named L&G Parties could assert rights under the Agreement, defendant's interpretation would control.[4]  However, when considered in the context of the other provisions of the Agreement, the generic term "parties" could plausibly refer either to the Named L&G Parties,

---

[4] Defendant notes that the Agreement could have used the phrase "L&G Parties" in § 10.8 to clarify the exclusion of L&G Parties from the limiting provision. (Def.'s Br. [123] at 15.)  But the converse is also true.  That is, the Agreement could have used the phrase "Named L&G Parties" in § 10.8 to clarify the inclusion of L&G Parties in the limiting provision.

11

as urged by defendant, or to the broader group of L&G Parties. *See State Farm Fire and Cas. Co. v. Bauman,* 313 Ga. App. 771, 774 (2012) (a phrase is ambiguous when it "'is of uncertain meaning, and may be fairly understood in more ways than one'")(quoting *W. Pac. Mut. Ins. Co. v. Davies,* 267 Ga. App. 675, 680 (2004)).

Having identified an ambiguity in § 10.8, the Court must attempt to resolve it by applying the rules of construction. *Blue Cross & Blue Shield of Ga., Inc.,* 305 Ga. App. at 436. The proper resolution is readily apparent in this case. The most relevant rule of construction is the familiar maxim that:

> The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part.

O.C.G.A. § 13-2-2(4). *See also Forsyth Cnty. v. Waterscape Serv., LLC,* 303 Ga. App. 623, 631 (2010)("'a court should, if possible, construe a contract . . . in a manner that gives effect to all of the contractual terms'")(quoting *Pomerance v. Berkshire Life Ins. Co. of Am.,* 288 Ga. App. 491, 494 (2007)).

As indicated in the Court's previous Order, defendant's interpretation of § 10.8 is hard to reconcile with the core provisions of the L&G Settlement Agreement. (Order [72] at 9.) Those provisions expressly convey specific contractual rights, including a release, a license, and a covenant not to sue, to a broad

12

group of L&G Parties that includes entities "under common control" with the Named L&G Parties. (L&G Settlement Agreement [3] at §§ 1.1, 5.1, 6.1 and 7.1.) Accepting defendant's interpretation, all of the rights granted to L&G Parties in §§ 5.1, 6.1 and 7.1 of the Agreement are summarily and inexplicably nullified by § 10.8.[5]

Interpreting "parties" as used in § 10.8 to refer to all of the parties specifically identified in the Agreement, including L&G Parties such as plaintiff, avoids this problematic result. So interpreted, § 10.8 limits the contractual rights of a non-signatory only to the extent that the non-signatory does not qualify as an L&G Party. (*Id*. at § 10.8.) That interpretation reconciles the granting provisions of §§ 5.1, 6.1 and 7.1 with the limiting clause of § 10.8. (*Id*.) Under the governing rules of statutory construction, it is adopted by the Court as the only reasonable interpretation of the term "parties" as used in § 10.8. *See* O.C.G.A. § 13-2-2(4) and *Waterscape Serv., LLC,* 303 Ga. App. at 631.

---

[5] Defendant tries to finesse the obviously inconsistent end result of its interpretation by suggesting that an L&G Party can bring a claim under the Agreement if it has the requisite approval or authorization. (Def.'s Br. [123] at 13.) However, the Agreement does not establish a process for obtaining approval to assert a claim or otherwise incorporate the authorization concept. (L&G Settlement Agreement [3].) Indeed, there is no textual support in the Agreement for conditioning the contractual rights of the L&G Parties on their obtaining authorization from a signatory. (*Id*.)

### 3. The notice provision of § 6.5 is not controlling.

Neither does § 6.5 of the Agreement provide a valid contractual defense to plaintiff's claims. Section 6.5 states:

> Notice of Breach. If the Releasing Parties assert or file a claim or demand within the scope of any of the covenants provided in this Article 6 of which the L&G Party Representative obtains actual knowledge, the L&G Representative will be required to provide written notice of such breach of covenant to the Releasing Party Representative before asserting any claim or demand relating to the breach of this Agreement against the Releasing Parties, and the Releasing Parties will be entitled to a period of 10 days after the date of any such notice in which to cure such breach.

(L&G Settlement Agreement [3] at § 6.5.) Defendant argues that § 6.5 creates a condition precedent to asserting any claims under the Agreement. (Def.'s Br. [123] at 24-26.) It is undisputed that the Releasing Party Representative did not receive written notice pursuant to § 6.5 prior to the filing of this lawsuit. (*Id*. at 25.) However, defendant's argument invoking § 6.5 is unpersuasive for several reasons.

First, it is questionable whether the language of § 6.5 creates a condition precedent under Georgia law. By its express terms, § 6.5 only requires notice when the L&G Representative obtains "actual knowledge" that the covenant to sue has been breached. (L&G Settlement Agreement [3] at § 6.5.) Thus, the provision does not require written notice of a breach before the Agreement becomes "absolute and obligatory" upon defendant, as required for a condition

14

precedent. O.C.G.A. § 13-3-4. *See also Gen. Steel, Inc. v. Delta Bldg. Sys., Inc.,* 297 Ga. App. 136, 139 (2009)("conditions precedent are not favored in interpreting contracts").

More importantly, the application of § 6.5 is by its express terms limited to "a claim or demand within the scope of any of the covenants provided in this Article 6." (L&G Settlement Agreement [3] at § 6.5.) Section 6.7 confirms that § 6.5 does not "limit or impair the right of any party to enforce the [other] terms and conditions of th[e] Agreement." (*Id.* at § 6.7.) Accordingly, the notice requirement of § 6.5 has no bearing on plaintiff's claims under the release and license provisions of §§ 5.1 and 7.1, either of which is sufficient to sustain plaintiff's motion for summary judgment. (*Id.* at §§ 5.1 and 7.1.)

        4.    <u>Parol evidence is not admissible to alter the terms of the contract</u>.

Finally, defendant's reliance on declaration testimony purporting to establish that plaintiff was not intended to benefit from the Settlement Agreement is unavailing. Under Georgia law, parol evidence is only admissible when an ambiguity in the contract cannot be resolved by the application of the rules of construction. *UniFund Fin. Corp. v. Donaghue,* 288 Ga. App. 81, 83 (2007). *See also Claussen v. Aetna Cas. & Sur. Co.,* 888 F.2d 747, 749 (11th Cir. 1989)(under Georgia law "[e]xtrinsic evidence to explain ambiguity in

15

a contract becomes admissible only when a contract remains ambiguous after the pertinent rules of construction have been applied"). That is not the case here.

As discussed above, the granting provisions of the L&G Settlement Agreement are very clear. Collectively, those provisions confer upon any entity that meets the broad definition of "L&G Party" specific contractual rights, including a covenant not to sue, a release and a license to the patents in suit. (L&G Settlement Agreement [3] at §§ 5.1, 6.1 and 7.1.) Defendant concedes that plaintiff qualifies as an L&G Party as defined by the Agreement. (Def.'s Br. [123] at 10.)

There is a superficial ambiguity as to the meaning of the term "parties" as used in the limiting provision of § 10.8. However, the ambiguity is easily resolved by applying the statutory rules of construction. To avoid the glaring inconsistency that would result from the interpretation urged by defendant, the Court interprets the term "parties" to include both Named L&G Parties and the broader group of L&G Parties that is defined by the Agreement. That interpretation reconciles the granting and the limiting provisions of the Agreement and gives full effect to all of its provisions, as required by Georgia law. *See* O.C.G.A. § 13-2-2(4) and *Waterscape Serv., LLC,* 303 Ga. App. at 631. There being no remaining ambiguity in the Agreement, parol evidence is inadmissible to explain the

16

intent of the Agreement.[6] *UniFund Fin. Corp.*, 288 Ga. App. at 83.

     5.   <u>Plaintiff is entitled to summary judgment</u>.

Based on the undisputed evidence in the record, plaintiff is an L&G Party with well-defined contractual rights under the L&G Settlement Agreement. (L&G Settlement Agreement [3] at § 1.1.) Those rights include a license to the patents in suit and a release from any suit to enforce the patents. (*Id.* at §§ 5.1 and 7.1.) There are no material facts in dispute, and the Court's interpretation of the Agreement is controlling as to the claims asserted in Counts I and III of the complaint for a declaratory judgment of non-infringement and breach of contract, and as to the Counterclaims asserted by defendant for infringement. Accordingly, the Court **GRANTS** plaintiff's motion for summary judgment [113] and **DENIES** defendant's motion for summary judgment [122] on those claims. As the Court has decided to grant plaintiff's motion for summary judgment based on the written submissions, its motion for oral argument as to the motion [114] is **DENIED as moot.**

In Count II of the complaint, plaintiff asserts a claim for declaratory judgment of invalidity as to the patents in suit. (Am. Compl. [4] at ¶¶ 65-69.) Plaintiff should inform the Court by

---

[6] Plaintiff filed a motion to strike the declaration testimony as inadmissible hearsay. (Pl.'s Mot. to Strike [133].) As a result of the Court's decision to disregard the testimony, plaintiff's motion to strike is **DENIED as moot.**

AO 72A
(Rev.8/82)

**Monday, November 5, 2012**, whether it still intends to pursue Count II, which appears to have been asserted only in the alternative to its contractual claims. (*Id.*) In Count IV of the Counterclaim, defendant asserts an alternative claim for breach of contract in which it alleges that the L&G Parties have breached the L&G Settlement Agreement. (Counterclaim [74] at ¶¶ 33-36.) The Court presumes that defendant has abandoned this claim, as it has presented no evidence of any breach by plaintiff. Nevertheless, defendant should likewise inform the Court by **Monday, November 5, 2012**, whether it intends to pursue the breach of contract claim. After the Court reviews the submissions of the parties, and assuming there are no remaining claims to be resolved, the Court will issue the declaratory judgment requested by plaintiff and set a hearing on damages.

## II.  MOTIONS TO SEAL PLEADINGS AND OTHER DOCUMENTS

Both parties have filed unopposed motions to seal various filings made in connection with the summary judgment motions. (Def.'s Mot. to Seal [110] and Pl.'s Mots. to Seal [112] and [134].) Ordinarily, the Court is reluctant to seal pleadings and other documents because of the presumption in favor of public access. *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007)("'[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process'")(quoting *Chicago Tribune Co.*

18

*v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)).  However, in this case there is good cause to grant the motions to seal because the referenced filings include and restate the material provisions of a confidential settlement agreement.  Accordingly, the Court **GRANTS** the motions to seal [110], [112] and [134] pursuant to Rule 26(c) and the protective order entered prior to plaintiff's filing of the complaint.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Motions to Seal [110], [112] and [134] should be **GRANTED as unopposed**, plaintiff's Motion for Summary Judgment [113] should be **GRANTED** and related Motion for Oral Argument [114] should be **DENIED as moot**, defendant's Motion for Summary Judgment [122] should be **DENIED**, and plaintiff's Motion to Strike Declaration Testimony [133] should be **DENIED as moot.**

SO ORDERED, this <u>25th</u> day of OCTOBER, 2012.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE